**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ismael Genoa, | No. CIV 11-388-TUC-FRZ (GEE) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Craig Apker; Louis W. Winn, Jr.; Federal Bureau of Prisons, | |
| Respondents. | |

On June 30, 2011, Ismael Genoa, an inmate confined in the Federal Correctional Institution in Tucson, AZ, filed a Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2241. (Doc. 1) In the petition, Genoa complains about two disciplinary incidents, which resulted in the loss of 81 days of good credit time (GCT). *Id*. In the first incident, he claims he was subject to an invalid regulation. (Doc. 1); (Doc. 10, p. 8) In the second incident, he claims his due process rights were violated. *Id*.

On August 26, 2011, the respondents filed an answer to the petition. (Doc. 8) They concede the issues are exhausted and argue the petition should be denied on the merits. Genoa filed a reply on September 12, 2011. The same day, he filed a motion for contempt (Doc. 11) and a motion to strike the declaration of Discipline Hearing Officer (DHO) Vickie Petricka. (Doc. 12)

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Edmonds for a Report and Recommendation.

1 | Motions

On September 12, 2011, Genoa filed a motion to hold the respondents' counsel in contempt. (Doc. 11)

Genoa argues counsel should be held in contempt for falsely stating in the answer that the first incident occurred in SHU Cell # 222, when it actually occurred in Unit C-02, Cell # 222, and for falsely stating that the second incident occurred in SHU Cell # 214, when it actually occurred in Unit C-01, Cell #214.

Counsel subsequently filed a Notice of Errata conceding error and correcting the record. (Doc. 13)

Counsel's error was a simple oversight. The record contains no evidence of bad faith. The motion for contempt should be denied. (Doc. 11)

Also on September 12, 2011, Genoa filed a motion to strike the declaration of Discipline Hearing Officer (DHO) Vickie Petricka, which was attached as an exhibit to the respondents' answer. (Doc. 12) Genoa argues the document "reopens" his hearing in violation of due process and should be stricken pursuant to Fed.R.Civ.P. 12(f). *Id*.

Pursuant to Fed.R.Civ.P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." " The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973, 618 F.3d 970 (9th Cir. 2010). "Motions to strike are generally regarded with disfavor and should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Rosendahl v. Bridgepoint Educ., Inc.*, 2011 WL 4914948, 9 (S.D.Cal. 2011); *see also Brown & Williamson Tobacco Corp. v. U.S.*, 201 F.2d 819, 822 (6th Cir.1953).

In this case, Genoa argues the declaration of Vickie Petricka "reopens" his hearing in violation of due process. It does not. The declaration describes Petricka's qualifications and experience, discusses the two incidents, and summarizes her findings. (Doc. 8-2, pp. 2-6) The

1  document bears directly on the subject matter of the petition.  The court should deny Genoa's
2  motion to strike.   (Doc. 12)

Summary of the Case

At the time of the incidents, Genoa was an inmate at the United States Penitentiary in Tucson, Arizona.  (Doc. 8, p. 1)  Genoa is currently serving a 160-month term of incarceration for Distribution of Child Pornography and Transporting Child Pornography by Computer.  *Id.*, p. 2.

In the petition, Genoa complains about two disciplinary incidents, which resulted in the loss of 81 days of good credit time (GCT).  (Doc. 1)  The petition includes six grounds for relief.  *Id.*  Grounds 1 and 2 address the first incident.  *Id.*  Grounds 3, 4, 5, and 6 address the second incident.  *Id.*

The First Incident

On August 29, 2010, Genoa and his cell mate, Robert Byron Galligan, were housed in Unit C-02, Cell # 222.  (Doc. 13, pp. 1-2) During the 4:00 p.m. inmate count, the two men pushed the "panic button" in their cell, which is a duress alarm used for emergency situations. (Doc. 8, pp. 2-3) The count was halted while Senior Correctional Officer Miguel Alcala investigated the alarm.  (Doc. 8, p. 3) The men told Alcala that they "had to go" and kicked the cell door.  *Id*.  Alcala determined there was no emergency, reset the alarm, instructed the men to stop activating the alarm, and returned to the inmate count. *Id*. Shortly afterwards, the two men again activated the "panic button" and kicked and punched the cell door.  *Id*.  Alcala reset the alarm and notified the Compound Officer.  *Id*.

The incident was investigated by Lt. Adam Bassett and referred to the Unit Discipline Committee (UDC).  *Id*.  On September 11, 2010, Bassett gave Genoa a copy of the Incident Report and a notice of the charges.  *Id*.  Genoa was charged with Tampering with a Security Device, Refusing to Obey an Order, and Interfering with the Taking of Count.  (Doc. 8, p. 2)

On September 21, 2011, Genoa appeared before the UDC. (Doc. 8, p. 3) The UDC, however, referred the matter to the Discipline Hearing Officer (DHO) due to the serious nature of the charge, Tampering with a Security Device. *Id*., pp. 2-3.

On September 24, 2010, Genoa appeared before the DHO. *Id*. He confirmed that he had been given a copy of the incident report, that he received his rights form, and that he understood his rights. (Doc. 8, p. 4) He stated he was ready to proceed. *Id*. Genoa admitted the charges but explained he was having a "panic attack." *Id*. DHO Petricka found Genoa had committed the offenses charged based on his admission and the fact that he did not report to Health Services either before or after the incident. *Id*.

Petricka imposed the following sanctions: "14 days in Disciplinary Segregation (suspended pending 180 days of clear conduct), disallow 14 days of Good Conduct Time (GCT), [f]orfeit 10 days of GCT, and loss of 90 days of Commissary." (Doc. 8-2, p. 4, ¶ 9)

Discussion: The First Incident

In Ground 1 of the petition, Genoa argues the BOP violated his right "to Separation of Powers and Due Process under the United States Constitution, when it[]s Correctional Officer . . . became legislature, without authority or jurisdiction to do so, and created a new federal prison penal law of, Tampering With a Security Device." (Doc. 1, p. 2)

In Ground 2, Genoa argues his "right against Ex Post Facto law making and/or Due Process" was violated when the BOP created a new law and applied it to him retroactively. (Doc. 1, pp. 2-3)

Genoa seems to believe that the BOP created the offense "Tampering With a Security Device" out of thin air after the August 29, 2010 incident.[1] He is incorrect.

---

[1] It may be that Genoa was unable to find the offense using its old citation, 28 C.F.R. § 541.13. The offense is now located at 28 C.F.R. § 541.3.

- 4 -

The Code of Federal Regulations contains the offense Genoa committed[2]: "Possession of any unauthorized locking device, or lock pick, or tampering with or blocking any lock device (includes keys), or destroying, altering, interfering with, improperly using, or damaging any security device, mechanism, or procedure." 28 C.F.R. § 541.3. This offense was previously found at 28 C.F.R. § 541.13 and existed in its present form as far back as 1993. 28 C.F.R. § 541.13 (1993).

The offense "Tampering With a Security Device" was not created by the BOP or Genoa's hearing officer after his incident. The court should deny his petition on Grounds 1 and 2.

The Second Incident

On December 4, 2010, Genoa and his cell mate, Robert Galligan, were housed in Unit C-01, Cell # 214. (Doc. 13, p. 2) While conducting rounds, Senior Correctional Officer Diego observed Genoa standing on a chair masturbating Galligan under a sheet. (Doc. 8, p. 5)

The incident was investigated by Lt. Paul Curran and referred to the United Discipline Committee (UDC). *Id*. The UDC, however, referred the matter to the Discipline Hearing Officer (DHO) due to the serious nature of the offense. *Id*.

On December 10, 2010, Curran gave Genoa a copy of the Incident Report and notice of the charge against him, Engaging in Sexual Acts. *Id*. Genoa subsequently appeared before DHO Vickie Petricka. *Id*. He confirmed that he was given a copy of the incident report, that he received his rights form, and that he understood his rights. (Doc. 8, p. 5) He stated he had no documentary evidence to present and was ready to proceed. *Id*.

---

[2] It could be argued that the phrase "tampering with" modifies "lock device" not "security device." Accordingly, the charge might have been more properly described as "*interfering* with any security device." Genoa did not raise this issue, however, so the court will not consider it. Considering the evidence against Genoa, it is unlikely that pursuing this issue would generate much traction.

1 | Genoa denied the charges explaining he was in bed reading a book at the time of the incident. *Id*. Galligan testified that Genoa was on the chair helping him pronounce a word. (Doc. 8, pp. 5-6)

DHO Petricka found Genoa had committed the offense charged, Engaging in a Sex Act. (Doc. 8, p. 6) (Doc. 8-2, ¶ 20) She found Senior Officer Diego's observations credible based on his testimony and his Incident Report # 2097548. (Doc. 8-2, ¶ 18) She disbelieved Genoa because his stories were inconsistent. *Id*. At various times, he said "he was in bed, then sitting at the desk, then standing on his bed assisting his cell mate with word pronunciation." (Doc. 8-2, ¶ 18)

Petricka imposed the following sanctions: "30 days in Disciplinary Segregation, disallow 27 days of Good Conduct Time (GCT), [f]orfeit 30 days of GCT, and loss of Commissary for 1 year, impounding his property for 90 days, and referral to the Choices Class offered at USP Tucson." (Doc. 8-2, p. 4, ¶ 9)

Discussion: The Second Incident

In Grounds 3 and 4, Genoa argues DHO Petricka "was or gave the appearance of being biased or partial by giving testimony at the DHO Hearing by stating: 'DHO finds the staff member[']s statements and observations are credible and believable, as the staff member observations were made strictly in the performance of their duties and THEY HAVE NO REASON TO MAKE UP FALSE ACCUSATIONS.'" (Doc. 10. p. 14) (capitalization in original) Genoa argues the DHO engaged in improper vouching citing, *inter alia*, *U.S. v. Weatherspoon*, 410 F.3d 1142 (9th Cir. 2005).

"Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *U.S. v. Weatherspoon*, 410 F.3d 1142, 1146 (9th Cir. 2005).

In this case, Petricka's statement could not be vouching because she was not arguing the government's case in front of a jury. Petricka was not misleading the trier of fact. In fact,

1 Petricka *was* the trier of fact. She was simply explaining in her report her credibility findings.

2 In Ground 5, Genoa argues the DHO's finding against him did not meet the "some
3 evidence" standard.

4 Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. § 3624.
5 Accordingly, they have a due process interest in the disciplinary proceedings that may take
6 away those credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). "Due process in a prison
7 disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a
8 statement of the evidence relied on by the prison officials and the reasons for disciplinary
9 action." *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987), *cert. denied*, 487 U.S. 1207
10 (1988). "The inmate has a limited right to call witnesses and to present documentary evidence
11 when permitting him to do so would not unduly threaten institutional safety and goals." *Id.*

12 The final decision to revoke good time credits must be based on "some evidence."
13 *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "The relevant question is whether there is any
14 evidence in the record that could support the conclusion reached by the disciplinary board."
15 *Id.* at 455-56. If so, then due process is satisfied. *Id.* The court need not examine the entire
16 record, independently assess the credibility of the witnesses, or weigh the evidence. *Id.* at 455.

17 In the instant case, the evidence was sufficient to support the decision of the DHO. The
18 DHO considered Genoa's statement, Galligan's statement, and the statement of Officer Diego.
19 (Doc. 8-2, pp. 5-6) She found Genoa's credibility to be lacking because he provided conflicting
20 versions of his story at various times. *Id*. She noted that while Genoa denied the charge, he
21 provided no evidence to dispute the account of the reporting officer. *Id*. She found Diego
22 credible because his observations were made during the performance of his duties and because
23 he had no reason to make up a false accusation. *Id*.

24 There is "evidence in the record that could support the conclusion reached by the
25 disciplinary board." *Id.* at 455-56. The finding of the DHO, therefore, was supported by "some
26 evidence."

In Ground 6, Genoa argues the DHO's sanction of loss of GCT was not authorized by law. Again, it appears the Genoa was unable to locate the governing regulation and concludes that the BOP made up his offense and punishment out of whole cloth. He is incorrect.

The offense, Engaging in Sexual Acts, is a "High Severity Level Prohibited Act[]" defined in the Code of Federal Regulations. 28 C.F.R. § 541.3, # 205. Available sanctions for a High Severity offense include forfeiture of GCT, disallowance of available GCT, disciplinary segregation, loss of privileges, impounding of inmate's personal property, or extra duty. *Id.* Here, the DHO sanctioned Genoa with "30 days in Disciplinary Segregation, disallow 27 days of Good Conduct Time (GCT), [f]orfeit 30 days of GCT, and loss of Commissary for 1 year, impounding his property for 90 days, and referral to the Choices Class offered at USP Tucson." (Doc. 8-2, p. 4, ¶ 9) The DHO's sanctions are authorized by law.

Recommendation

The Magistrate Judge recommends that the District Court, after its independent review of the record deny the motion for contempt (Doc. 11), deny the motion to strike (Doc. 12), and deny the petition on the merits (Doc. 1).

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, that party's right to de novo review may be waived.

The Clerk is directed to send a copy of this Report and Recommendation to the petitioner and the respondent.

DATED this 9th day of November, 2011.

_____
Glenda E. Edmonds
United States Magistrate Judge